# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF MONTANA

# BUTTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA EX REL. FRANK M. REMBERT AND MICHAEL R. PARADISE, <br><br> Relators, <br><br> vs. <br><br> BOZEMAN HEALTH DEACONESS HOSPITAL D/B/A BOZEMAN HEALTH, and DEACONESS-INTERCITY IMAGING, LLC D/B/A ADVANCED MEDICAL IMAGING, <br><br> Defendants. | No. CV 15-80-BU-SEH <br><br> ORDER |

## Background

Relators' Second Rule 26(b)(5)(B) Motion for Deteremination of Privilege Re: Claw-Back[1] ("Second Rule 26(b)(5)(B) Motion") and supporting documents

---

[1] Doc. 199.

were filed March 1, 2018.² A response was provided on March 15, 2018.³ The Court's Order of March 15, 2018, provides:

> If any part of the excerpt of the deposition transcript of Gordon Davidson is considered by the Court or relied upon by any party in addressing or resolving any issue now pending before the Court in this case or that is hereinafter presented to the Court for resolution, the entirety of the content of the excerpt "will be made public contemporaneously with the Court's ruling on the issue." ⁴

At issue is a letter ("Exhibit 17")⁵ from Liz Lewis ("Lewis"), a Bozeman Health Deaconess ("BDH") Vice President,⁶ to BDH's counsel T.J. Sullivan ("Sullivan").⁷ The letter recites on its face: "CC: D. Monaghan."⁸ David Monaghan ("Monaghan") is identified as an employee of Intercity Radiology ("ICR").⁹

Relators claim the letter and the deposition testimony relating to the letter

---

² Docs. 200 and 201.

³ Doc. 242.

⁴ Doc. 243 at 1-2.

⁵ *See* Docs. 201-1 and 201-2.

⁶ *See* Doc. 242 at 3.

⁷ *See* Doc. 200 at 2-3; Doc. 242 at 3.

⁸ Doc. 201-1 at 1; Doc. 201-2 at 1.

⁹ *See* Doc. 200 at 3; *See also* Doc. 242 at 3.

was not privileged, or alternatively, that any such privilege was waived.[10] Defendants assert in response that the letter and the deposition testimony were protected by attorney-client privilege and that "[t]here is no evidence that the document was sent to Monaghan or anyone else that would break the attorney-client privilege between BDH and Sullivan."[11]

Exhibit 17 was first produced by Defendants on November 9, 2017, in two copies provided in response to two separate requests for production.[12] It was marked and introduced at Monaghan's deposition on December 11, 2017.[13] Selections of it were read into the record.[14] Monaghan was asked and answered questions about it.[15] No privilege objection was stated.

Exhibit 17 was again introduced and discussed at Sullivan's deposition on December 20, 2017.[16] Defendants raised a privilege concern at that time, noting

---

[10] *See* Doc. 199 at 2.

[11] Doc. 242 at 4.

[12] *See* Doc. 200 at 7; *see also* Docs. 200-5 and 200-6.

[13] *See* Doc. 201-3 at 2.

[14] *See* Doc. 201-3 at 3.

[15] *See* Doc. 201-3.

[16] *See* Doc. 201-4.

that they were attempting "to sort out the privilege here"[17] and voicing a conditional privilege objection "to the extent that [Exhibit 17] was sent as a draft to [Sullivan] by Ms. Lewis, that would be privilege."[18] No claw-back notice was issued.

The same exhibit was again introduced at the deposition of Gordon Davidson on February 26, 2018,[19] at which Defendants asserted attorney-client privilege.[20] Later on that same that day, Defendants issued a claw-back notice[21] concerning the exhibit and related deposition testimony.

## Discussion[22]

The Ninth Circuit employs an eight-part test for determination of attorney-client privilege.[23] If present, it extends to:

> (1) [ ] legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the

---

[17] Doc. 201-4 at 3.

[18] Doc. 201-4 at 2.

[19] See Doc. 241 at 3.

[20] See Doc. 241 at 3.

[21] See Doc. 200-1.

[22] Because Defendants do not argue that Exhibit 17 is protected word product, the Court will not analyze Relators' argument on that topic.

[23] See *United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009).

-4-

communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.[24]

Three components of the test are at issue here: (1) whether legal advice was sought; (2) whether the communication was confidential; and (3) whether the privilege was waived. Defendants have the burden of establishing the attorney-client relationship and the privileged character of the document.[25]

The attorney-client privilege protects only communications concerning legal advice:

> "[The] protection of the privilege extends only to *communications* and not to facts. A fact is one thing and a communication concerning that fact is an entirely different thing. The client cannot be compelled to answer the question, 'What did you say or write to the attorney?' but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney."[26]

---

[24] *United States v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010)(quoting *In re Grand Jury Investigation*, 974 F.2d 1068, 1071 n.2 (9th Cir. 1992)).

[25] *United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011).

[26] *Upjohn Co. v. United States*, 449 U.S. 383, 395-96 (1981)(citations omitted).

Exhibit 17 is a communication from BDH to counsel about an agreement's terms. Though the communication disseminates facts, is it a communication made for the purpose of receiving legal advice? Are Relators attempting to ask a question seeking legal advice? As Defendants note, Relators may obtain facts expressed in Exhibit 17– they may not obtain facts requiring disclosure of a communication between client and counsel.

To invoke attorney-client privilege, the communication must have been "'made in confidence.'"[27] "*[A]ny* voluntary disclosure of information to a third party waives the attorney-client privilege, regardless of whether such disclosure later turns out to be harmful."[28] The intent to keep the communication confidential is critical.[29]

Exhibit 17 is a document purportedly sent from Lewis regarding the joint venture to attorney Sullivan and upon which Monaghan was "cc'd". Defendants argue that the document was a draft and that "[t]he mere inclusion of Monaghan as a potential recipient of an unsigned, non-letterhead, draft document does not waive

---

[27] *Ruehle*, 583 F.3d at 607 (quoting *In re Grand Jury Investigation*, 974 F.2d at 1071 n.2).

[28] *United States v. Ruehle*, 583 F.3d 600, 601 (9th Cir. 2009)(citing 3 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence, § 503.40 (Joseph M. McLaughlin, ed., Matthew Bender 2d ed. 2009)).

[29] *Griffith v. Davis*, 161 F.R.D. 687, 694 (C.D. Cal. 1995)(citing *United States v. Miller*, 874 F.2d 1255 (9th Cir. 1989).

the privilege."[30] Defendants further state: (1) that the two copies of Exhibit 17 were produced by Defendants and not Monaghan or others; (2) that during his deposition, Monaghan testified that he did not remember seeing the document before; and (3) "Sullivan testified that he remembered the document, but did not recall it going to Monaghan."[31] Plaintiffs state that "Exhibit 17 indicates that it was shared with Monaghan, who was at that time the practice administrator for ICR" and whose inclusion would break the confidentiality.[32]

Disclosure to a third party by the client, who stands as both possessor and protector of the attorney-client privilege, is treated as waiver of the privilege.[33] The privilege is strictly construed.[34] The communication was not "made in confidence." Defendants' argument hinges on argument that Exhibit 17 likely was not sent to or was not received by Monaghan. That Sullivan does not recall if Exhibit 17 was sent to Monaghan[35] and that Monaghan could not recall receiving

---

[30] Doc. 242 at 4.

[31] Doc. 242 at 5.

[32] Doc. 200 at 10.

[33] *Weil v. Inv./Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 24 (9th Cir. 1981)).

[34] *Id.* at 24 (citations omitted).

[35] Doc. 201-4 at 3 ("This is – it's hard to say here because this isn't an email. So if – this is some sort of draft document. I can't – I can't answer about that.")

it[36] proves little, if anything, regarding sending or receiving. The letter itself was dated February 2005— nearly 11 years before the instant lawsuit was filed, and almost 13 before Sullivan's and Monaghan's depositions were taken. Even if not sent to or received by Monaghan, it evidences some intent by BDH to send the communication to a third party. The letter was not "made in confidence."[37] It does not fall within the ambit of the strictly construed attorney-client privilege. Waiver need not be addressed.

ORDERED:

Relators' Second Rule 26(b)(5)(B) Motion[38] is GRANTED in part as follows:

1. Exhibit 17 is not protected by attorney-client privilege.

2. Deposition testimony related to Exhibit 17 is not privileged.

///

///

---

[36] *See* Doc. 201-3 at 6.

[37] *Ruehle*, 583 F.3d at 607 (quoting *In re Grand Jury Investigation*, 974 F.2d at 1071 n.2).

[38] Doc. 199.

3. Documents relied upon by the Court in resolving this issue, "including documents filed under seal" are now public.[39] The Clerk is directed to unseal docket numbers 201, 201-1, 201-2, 201-3, 201-4 and 241.

DATED this 3rd day of April, 2018.

*Sam E. Haddon*
SAM E. HADDON
United States District Judge

---

[39] Doc. 144 at 9.