FILED

JUL 19 2018

Clerk, U.S. District Court
District Of Montana
Helena

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BUTTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA EX REL. FRANK M. REMBERT AND MICHAEL R. PARADISE,<br><br>Plaintiffs,<br><br>vs.<br><br>BOZEMAN HEALTH DEACONESS HOSPITAL D/B/A BOZEMAN HEALTH, and DEACONESS-INTERCITY IMAGING, LLC D/B/A ADVANCED MEDICAL IMAGING,<br><br>Defendant. | No. CV 15-80-BU-SEH<br><br>**ORDER** |

Pending are: (1) Bozeman Health Deaconess Hospital's ("BDH") Renewed

Motion to Quash Subpoena and for Protective Order;[1] and (2) Relators' Motion for Sanctions.[2] Both are ripe for resolution.

**Background**

BDH filed its original motion to Quash Subpoena and for Protective Order on January 1, 2018, asserting that documents and testimony regarding BDH's 2014 engagement (the "2014 Engagement") of Value Management Group ("VMG") were protected by attorney client privilege and the work product doctrine.[3]

The Court ordered the deposition of VMG to proceed, upon condition that counsel not ask questions about work performed by VMG in 2014[4] and that "[i]f the Court determines that work performed by VMG in 2014 is not privileged, the VMG deposition may be reopened to allow the parties to question VMG on that topic only."[5]

---

[1] Doc. 317.

[2] Doc. 319.

[3] *See* Doc. 1, CV 18-18-BU-SEH. Cause number CV 18-18-BU-SEH was consolidated with this action by the Court's Order of May 22, 2018. *See* Doc. 294 at 8-9. Relators had previously issued subpoenas seeking, *inter alia*, production of such documents and a deposition with VMG on the topic of the 2014 Engagement. *See* Doc. 294 at 3-4.

[4] *See* Doc. 273.

[5] Doc. 273 at 2.

2

On May 22, 2018, the Court ruled that BDH had failed to meet its burden of establishing that the documents and testimony regarding BDH's 2014 engagement of VMG were protected by attorney client privilege or work product protection.[6] BDH's motion was denied "without prejudice to renewal," if BDH filed, "*in camera,* the specific communications it [sought] to protect as privileged."[7] The specific communications were filed as ordered.[8]

## Discussion

**I.     BDH's renewed motion to quash and for protective order.**

"The attorney-client privilege protects confidential communications between attorneys and clients, which are made for the purpose of giving legal advice."[9] The standard for establishing the privilege, as stated by the Ninth Circuit is:

> "(1) [] legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or

---

[6] *See* Doc. 294 at 6-7.

[7] Doc. 294 at 7.

[8] Doc. 312.

[9] *United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)).

3

by the legal adviser, (8) unless the protection be waived."[10]

"The . . . privilege may extend to communications with third parties who have been engaged to assist the attorney in providing legal advice. If the advice sought is not legal advice, but, for example, accounting advice from an accountant, then the privilege does not exist."[11] Business matter communications are not privileged.[12] Attorney work product protection applies to "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative."[13] The protection is available only if "the 'document was created because of anticipated litigation, and would not have been created in substantially similar form but for the prospect of litigation.'"[14]

BDH has renewed its blanket assertion that "the 2014 Engagement was privileged and work product protected."[15] The specific documents for which

---

[10] *Richey*, 632 F.3d at 566 (quoting *United States v. Graf*, 610 F. 3d 1148, 1156 (9th Cir. 2010)).

[11] *Richey*, 632 F.3d at 566 (citing *Weil v. Inv./Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 24 (9th Cir. 1981)).

[12] *See United States v. Rowe*, 96 F.3d 1294, 1297 (9th Cir. 1996).

[13] Fed. R. Civ. P. 26(b)(3)(A).

[14] *Richey*, 632 F.3d at 568 (quoting *In re Grand Jury Subpoena (Mark Torf/Torf Envtl. Mgmt.)*, 357 F.3d 900, 908 (9th Cir. 2004)).

[15] Doc. 318 at 3-4.

protection was sought were submitted to the Court *in camera*.[16] A privilege log identifying protected documents, documents produced for which protection was not sought, and certain documents already ruled to be unprotected, was provided.[17]

Specific grounds for each item BDH sought to protect, beyond a basic assertion of "attorney client," "work product," or "common interest" were not stated.[18] Rather, BDH relies upon: (1) the contents of VMG's January 31, 2014 letter ("Engagement Letter") to T.J. Sullivan ("Sullivan"), BDH's counsel from the law firm Drinker Biddle and Reath ("DBR"),[19] and (2) affidavits of Sullivan and Elizabeth Lewis ("Lewis"), BDH's chief operating officer, attesting to BDH's expectation of the 2014 Engagement's protected status (the "Affidavits").[20] A separately stated reason for protection against production was that Relators' state court suit against BDH was ongoing at the time of the 2014 Engagement.[21]

BDH has failed to establish that blanket protection, as requested, is warranted. The Engagement Letter and the two Affidavits relied upon were

---

[16] *See* Doc. 312.

[17] *See* Doc. 312-1.

[18] *See* Docs. 312 and 312-1.

[19] *See* Doc. 318 at 2.

[20] *See* Doc. 318 at 2-3.

[21] *See* Doc. 318 at 3.

already before the Court when it determined earlier that BDH failed to meet its burden. The existence of ongoing state court litigation does not change that assessment.

Neither the Engagement Letter nor the Affidavits specifically connect the 2014 Engagement to legal representation by Sullivan in the state court proceedings. However, both the Affidavits and Engagement Letter make clear the advice BDH sought from Sullivan pertaining to the 2014 Engagement was advice on a "potential transaction," not the state court litigation.[22]

Employees of VMG, during the 2014 Engagement, have not been shown to be agents "engaged to assist" Sullivan or DBR in the provision of legal advice to BDH.[23] The 2014 Engagement materials are not entitled to blanket attorney-client protection.

BDH has likewise failed to establish that work product protection applies to any part of the 2014 Engagement materials. Although it did not previously assert a specific reason for work product protection, it now raises the state court litigation in 2014 as a possible basis.

---

[22] Doc. 1-1 at 12-13, CV 18-18-BU-SEH; *See also* Doc. 1-1 at 3-11, CV 18-18-BU-SEH.

[23] *See Richey*, 632 F.3d at 566 (citing *Weil*, 647 F.2d at 24); *See e.g., Scott v. Chipotle Mexican Grill, Inc.*, 94 F. Supp 3d. 585, 592 (S.D.N.Y. 2015) (communications from accountant were not privileged because they consisted of factual research to assist client in making business decisions, rather than to assist attorney in rendering legal advice.)

6

No connection between the state court litigation and the 2014 Engagement has been demonstrated. It has not been shown that the documents related to the 2014 Engagement "would not have been created in substantially similar form but for the prospect of litigation."[24]

As ordered, BDH filed the specific communications it sought to protect as privileged.[25] The documents, identified on the privilege log as "Work Product" or "Work Product/Common Interest,"[26] and identified by the bates number listed in footnote 27 below, are not entitled to protection.[27]

In addition, certain other documents identified as "Attorney Client" are not entitled to protection. The employees of VMG were not employed by Sullivan or DBR to assist in rendering legal advice. Documents that did not involve Sullivan or DBR are not protected by attorney-client privilege. Moreover, the attorney-

---

[24] *Richey*, 632 F.3d at 568 (quoting *In re Grand Jury Subpoena (Mark Torf/Torf Envtl. Mgmt.)*, 357 F.3d at 908).

[25] *See* Doc. 294 at 7.

[26] *See* Doc. 312-1.

[27] VMG-PRIV0000001, VMG-PRIV0000008-32, VMG-PRIV0000034-110, VMG-PRIV0000153-63, VMG-PRIV0000165-90, VMG-PRIV0000259-64, VMG-PRIV0000270, VMG-PRIV0000279-95, VMG-PRIV0000304-8, VMG-PRIV0000311-14, VMG-PRIV0000319, VMG-PRIV0000324-39, VMG-PRIV0000429-84, VMG-PRIV0000488-963, VMG-PRIV0000965-84, VMG-PRIV0000990, VMG-PRIV0000999-1003, VMG-PRIV0001006-15, VMG-PRIV0001056-61, VMG-PRIV0001350-1412, VMG-PRIV0001414-16, VMG-PRIV0001677, VMG-PRIV0001695.

client privilege protects only communications related to the provision of legal advice. Documents that are not communications are not protected.[28] Any document attached to an email that did not involve BDH's counsel cannot be considered a communication protected by attorney-client privilege. Documents not attached to an email are not entitled to attorney-client privilege. Accordingly, the documents, identified in the privilege log[29] and submitted *in camera* and identified by the bates number listed in footnote 30 below, are not entitled to attorney client privilege.[30]

Defendants also submitted:

(1) an email from VMG's Nick Taglioli ("Taglioli") to Sullivan and VMG's Aaron Murski ("Murski").[31]

(2) an email from Murski to Sullivan.[32]

---

[28] *See Richey*, 632 F.3d at 567 (citing *Graf*, 610 F.3d at 1156).

[29] *See* Doc. 312-1.

[30] VMG-PRIV0000002-7, VMG-PRIV0000033, VMG-PRIV0000152, VMG-PRIV0000164, VMG-PRIV0000258, VMG-PRIV0000265, VMG-PRIV0000296-97, VMG-PRIV0000303, VMG-PRIV0000485, VMG-PRIV0000486-87, VMG-PRIV0000985, VMG-PRIV0001063-64, VMG-PRIV0001067, VMG-PRIV0001069, VMG-PRIV0001261-64, VMG-PRIV0001265-68, VMG-PRIV0001269-71, VMG-PRIV0001272-75, VMG-PRIV0001276-92, VMG-PRIV0001349, VMG-PRIV0001413, VMG-PRIV0001417, VMG-PRIV0001656-57, VMG-PRIV0001662-63, VMG-PRIV0001666-67, VMG-PRIV0001671-74, and VMG-PRIV0001675-76.

[31] VMG-PRIV0000964.

[32] VMG-PRIV0001016.

(3) an unsigned copy of the Engagement Letter.[33]

(4) emails involving Murski and Sullivan, together with an attached executed version of the Engagement Letter.[34]

(5) emails among Taglioli, Sullivan, and Murski.[35]

(6) emails between Murski and Sullivan, two of which are contained in VMG-PRIV0001055.[36]

(7) emails between BDH's Lewis, Sullivan, Murski, and AMI's Courtney Funk ("Funk").[37]

(8) emails between BDH's Lewis, Sullivan, Murski, and AMI's Funk,[38] which are identical to those found in VMG-PRIV0001068.

The claimed privilege of each is addressed separately below.

(1) is not a communication between a "client" and lawyer, nor is it, under *Richey*, a communication between a lawyer and a third party engaged to assist in the provision of legal advice. It is not privileged.

---

[33] VMG-PRIV0001017-22.

[34] VMG-PRIV0001055 and VMG-PRIV0001056-61.

[35] VMG-PRIV0001062.

[36] VMG-PRIV0001065-66.

[37] VMG-PRIV0001068 and VMG-PRIV0001069.

[38] VMG-PRIV0001070.

9

(2) is not a communication between a "client" and lawyer, nor is it a communication between a lawyer and a third party engaged to assist in the provision of legal advice. It is not privileged.

(3) was publically disclosed by BDH, waiving any privilege that may have attached.[39] It is not privileged.

(4) the emails are not a "communication[s] . . . by the client."[40] Murski is a third party not shown to be engaged to assist in the provision of legal advice. The documents are not privileged.

(5) the emails are not communications between a "client" and lawyer, nor are they, under *Richey*, communications between a lawyer and a third party engaged to assist in the provision of legal advice. They are not privileged.

(6) the emails are not privileged.

(7) although the emails include both BDH, the "client," and Sullivan, they do not pertain to the provision of Sullivan's legal advice. Like in *Richey*, the communication relates to VMG's ability to "determin[e] the value" of AMI.[41]

---

[39] *See* Doc. 1-1 at 6-11, CV 18-18-BU-SEH; *See Richey*, 632 F.3d at 566 (citing *Weil*, 647 F.2d at 24).

[40] *Richey*, 632 F.3d at 566 (quoting *Graf*, 610 F. 3d at 1156).

[41] *Richey*, 632 F.3d at 567.

10

Sullivan's receipt of them does not render them privileged.[42] The emails are not privileged.

(8) is not privileged.

## II. Relators' Motion for Sanctions.[43]

Relators move for sanctions against Defendant, based upon, *inter alia*: (1) BDH's failure to review documents before asserting privilege; (2) BDH's withholding of legitimate discovery over a long period of time; and (3) BDH's shifting positions with regard to the 2014 Engagement documents.[44]

Sanctions are not warranted. BDH complied with the Court's orders and was substantially justified in objecting to disclosure of the 2014 Engagement materials.

BDH timely filed the documents it sought to protect on June 8, 2018, together with a privilege log, a renewed motion, and a brief.[45] It complied with the

---

[42] *See Richey*, 632 F.3d at 567; *See also,* JAMES WM. MOORE ET AL., 6 MOORE'S FEDERAL PRACTICE § 26.49[1], at 361-62 (3d ed. 2017) ("merely copying emails to counsel does not provide a basis for attaching attorney client privilege to emails that do not seek legal advice and are otherwise unprivileged") (citing *Zelaya v. Unicco Service Co.*, 682 F. Supp. 2d 28, 39 (D.D.C. 2010)).

[43] Doc. 319.

[44] Doc. 320 at 29-30

[45] *See* Docs. 312, 317, and 318.

11

core directive of the Court's Order of May 22, 2018.[46]

BDH was substantially justified in opposing disclosure of the 2014 Engagement materials, pending a ruling from the Court on whether the materials were entitled to protection from disclosure.[47] Sanctions against BDH are not warranted.

ORDERED:

1. BDH's Renewed Motion to Quash Subpoena and for Protective Order is DENIED.[48]

2. BDH shall forthwith produce to Relators all documents identified in the privilege log[49] and submitted to the Court *in camera*.[50]

3. The parties may reopen the VMG deposition under the conditions set forth in paragraph 2(b) and 2(c) of the Court's Order of April 30, 2018.[51]

---

[46] *See* Docs. 294 at 7 and 312.

[47] See *Richey*, 632 F.3d at 566 ("The attorney-client privilege may extend to communications with third parties who have been engaged to assist the attorney in providing legal advice.") (citing *Smith v. McCormick*, 914 F.2d 1153, 1159-60 (9th Cir. 1990)).

[48] Doc. 317.

[49] Doc. 312-1.

[50] Doc. 312.

[51] Doc. 273 at 2.

FURTHER ORDERED:

Relators' Motion for Sanctions[52] is DENIED.

DATED this 19th day of July, 2018.

SAM E. HADDON
United States District Judge

---

[52] Doc. 319.